UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEVEN J. GREENSTEIN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A. F/K/A WELLS FARGO HOME MORTGAGE, INC., DOES 1-20; and ROE ENTITIES 1-20,<br><br>Defendants. | Case No. 2:14-cv-01457-APG-CWH<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 25) |

Plaintiff Steven Greenstein contends that defendant Wells Fargo Bank, N.A. entered into an oral contract with him during several phone conversations. Greenstein says he called Wells Fargo to discuss modifying his existing home loan and that Wells Fargo agreed to an oral contract to do so. Greenstein sues Wells Fargo for breach of that contract, violation of the covenant of good faith and fair dealing, and fraud. Wells Fargo moves for summary judgment on each of these claims, and I grant Wells Fargo's motion.

The undisputed evidence makes clear that there was no offer and acceptance of an agreement to modify Greenstein's loan. And even if there were, Nevada's statute of frauds would void the contract because it was not in writing. Without a contract, Greenstein's claims for breach of contract and breach of the implied covenant fail. As to his fraud claim, Greenstein offers no evidence from which a reasonable jury could find that Wells Fargo made a false statement to Greenstein, so this claim must also fail.

**I.   BACKGROUND**

Greenstein signed a deed of trust and promissory note for his home loan in 2005, with a principal amount of one million dollars.[1] Wells Fargo was assigned this deed and note the

---

[1] ECF No. 25-1 at 3.

following year.[2] By 2011, Greenstein had made no dent in the million-dollar principal,[3] so he called Wells Fargo to see if he qualified for a loan modification.[4]

In early 2011, Greenstein (or his father on his behalf)[5] called Wells Fargo several times to discuss modifying or refinancing his loan. The conversations went as one might expect: Greenstein asked what options might available and Wells Fargo offered several. One problem standing in Greenstein's way was that he owed significant principal on his existing loan. Wells Fargo's customer representatives brought this up during these conversations, noting that Greenstein would probably not qualify for certain programs unless he first paid down this principal.[6]

In these conversations, Greenstein asked Wells Fargo representatives to agree to modify his loan if he paid down his principal, but they would never commit. For example, during one call Greenstein's father asked: "does that mean that you would modify it, in other words, if this mortgage were to be reduced?"[7] The representative responded noncommittally: "Then we could potentially review him for that program."[8]

In his opposition, Greenstein focuses on a call he made to Wells Fargo on February 3, 2011. Greenstein asked Wells Fargo whether he would qualify for a modification if he paid down the principal on his loan. The representative replied that if he paid down his principal then "[Wells Fargo] would reassess the financial information" and that Greenstein could then "look into running his financial information based on . . . the new balance and new financial

---

[2] ECF No. 25-3 at 2.

[3] ECF No. 1-1 at 7.

[4] *Id.*

[5] Greenstein's father often negotiated on his behalf so I treat both of their conversations together.

[6] *See, e.g.*, ECF No. 34-1 at 8.

[7] ECF No. 32 at 6.

[8] *Id.*

information."[9]  The representative left no doubt that she "can't do a hypothetical if [Greenstein would] get approved for them or not, until the actual changes are made."[10]  On this same call, the representative repeatedly told Greenstein that there were numerous potential modifications he might qualify for (over 20 in total),[11] and that there was no way to know for sure whether he would be approved at that point: "you are not eligible for [a modification] at this time.  There's nothing else I can do with that situation. . . . I can't [give] you a hypothetical if [you] pay [the principal down]."[12]

      After these calls, Greenstein did in fact pay down his principal.  Over a number of payments, Greenstein paid off over $250,000 of his loan.[13]  Wells Fargo responded by reducing his monthly payments on his existing loan.[14]

      After Greenstein paid down his principal, he submitted to Wells Fargo an application to refinance his mortgage.[15]  Wells Fargo's underwriter first requested additional documents from Greenstein.[16]  But ultimately, the underwriter denied Greenstein's application for several reasons, including that Greenstein never provided the requested information, his income was not high

---

[9] ECF No. 34-1 at 16-17.

[10] *Id.*

[11] *Id.* at 7.

[12] *See id.* at 18; *id* at 7 (representative stating that the "best solution we could hope for" would be a government modification program that would require a lower principal); *id.* at 8 ("You have to, again, as I said previously, prequalify and be eligible for that specific type of modification. Some of it has to do with your investor; some has to do with the type of loan you have; some has to do with the basic financial information of your situation. Okay?  I mean the only thing I can do is run through the modification process here, see if you prequalify.").

[13] ECF No. 1-1 at 7-8; ECF No. 25-5 at 118.

[14] ECF No. 25-4 (statements showing declining mortgage payments).

[15] ECF No. 1-1 at 8-9; ECF No. 25-7 at 2-8.

[16] ECF No. 25-10 at 2.

enough, and he had too many outstanding debts.[17]  When Greenstein found out that he was turned down, he stopped making his mortgage payments.[18]

## II.    ANALYSIS

### A.  Summary Judgment

Summary judgment is appropriate when the pleadings, discovery responses, and other offered evidence show "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[19]  When considering summary judgment, I view all facts and draw all inferences in the light most favorable to the non-moving party.[20]

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[21]  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[22]  He "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[23]

### B.  There are no triable facts as to Greenstein's breach of contract or implied covenant claims.

Greenstein's breach of contract and breach of the implied covenant claims both require that Greenstein prove a contract exists between him and Wells Fargo.[24]  But the undisputed evidence shows that there is no such contract.

---

[17] ECF No. 25-12 at 2.

[18] ECF No. 25-13 at 2.

[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (*citing* Fed. R. Civ. P. 56(c)).

[20] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[22] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citation omitted).

[23] *Bhan v. NME Hosps. Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[24] *Marquis Aurbach Coffing, P.C. v. Dorfman*, 2015 WL 6174346, at *3 (D. Nev. Oct. 20, 2015); *Saini v. Int'l Game Tech.*, 494 F. Supp. 3d 913, 919–20 (D. Nev. 2006).

First, Greenstein offers no evidence from which a reasonable jury could find that there was an offer and an acceptance of all the material terms in the loan agreement he alleges.[25] Greenstein does not allege what the material terms of the agreement are, much less provide evidence showing that Wells Fargo agreed to them.[26] Wells Fargo's representatives repeatedly told Greenstein that they could not say whether he would be approved for any sort of modification or refinance until he submitted his application. These representatives suggested that Greenstein might be approved at some point after he applied. But at best Greenstein has shown that Wells Fargo "agree[d] [it might] agree" later, which, "without more, [is] not a binding contract."[27]

Greenstein makes much out of Wells Fargo's statements that he should reduce his principal to qualify for a modification or refinance.[28] But that Wells Fargo told Greenstein that he could not qualify unless he paid down his principal is different from telling him that he would qualify if he paid it down (which they never did).[29]

---

[25] *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).

[26] I have reviewed every piece of evidence Greenstein attached to his opposition, and none of it indicates that any Wells Fargo representative ever promised that he would be approved for a modification if he paid down his principal. In fact, Greenstein's testimony shows that he never understood that Wells Fargo promised him he would be refinanced, only that it was "probable." *See* ECF No. 32-10 at 8 ("It was my understanding that I needed to make those payments; otherwise, I probably would not get the house refinanced.").

[27] *Hampton v. Countrywide Home Loans, Inc.*, 2011 WL 1792743, at *2 (D. Nev. May 11, 2011); *see also First. Nat. Mortg. Co. v. Fed. Realty Inv. Trust*, 631 F.3d 1058, 1065 (9th Cir. 2011).

[28] It remains unclear what terms Greenstein believes that Wells Fargo agreed to. To the extent that Greenstein is arguing that Wells Fargo agreed to reduce his payments if he paid his principal down as opposed to refinancing his interest rate—which is the only agreement even somewhat supported by the record—Wells Fargo would not be agreeing to anything new because the parties' existing note already allowed that. ECF No. 25-1. And more importantly, the undisputed evidence shows that Wells Fargo actually reduced Greenstein's payments after he paid his principal down, so Greenstein would not have created a triable issue about breach. ECF No. 25-4.

[29] Greenstein's opposition offers a confusing array of block quotes with virtually no analysis explaining how Wells Fargo's statements constitute either an offer or acceptance of a binding oral contract. Greenstein does not appear to meaningfully argue in his opposition that the

Second, even if Wells Fargo had entered into an oral agreement to modify Greenstein's loan, Nevada's statute of frauds would void it. Nevada's statute of frauds requires that any agreement related to an interest in land—such as a loan modification—be in writing, otherwise, the contract is void.[30] Other courts have addressed this precise question before, holding that oral agreements to modify loans are void: "'Modifications to deeds of trust or promissory notes are . . . subject to the statute of frauds.' . . . Thus, the alleged oral contract [to modify plaintiff's loan] violates the statute of frauds, and Plaintiff claims [] breach of a contract that does not actually exist.[31]

Greenstein failed to create a triable issue that he had an oral agreement with Wells Fargo to modify his loan, and even if he had, the statute of frauds would void that contract. Greenstein's claims for breach of contract and breach of the implied covenant thus fail.

**C. There are no triable facts as to Greenstein's fraud claim.**

Greenstein's fraud theory is that Wells Fargo was merely a loan servicer with no right to unilaterally modify the terms of Greenstein's loan so it committed fraud by suggesting that it could do so.

---

evidence creates an issue of fact about whether a contract exists, he only cites the elements of a breach of contract claim and discusses the statute of frauds. *See* ECF No. 32 at 16-26.

[30] Nev. Rev. Stat. § 111.210.

[31] *Sarro v. Nev. State Bank*, 2016 WL 6909105, at *4 (D. Nev. Nov. 23, 2016) (citation omitted); *see also Hampton v. Countrywide Home Loans, Inc.,* 2011 WL 1792743, at *2 (D. Nev. May 11, 2011). The parties argue about whether Greenstein's alleged oral agreement could be performed within a year, but that does not matter. Whether the agreement was capable of being performed within a year is an element of a distinct section of Nevada law that is an independent means of voiding an oral agreement. *See* Nev. Rev. Stat. § 111.220. Greenstein also argues that Wells Fargo waived the statute of frauds affirmative defense, but not so. Wells Fargo explicitly pleaded all of the defenses in its note and deed—which included defenses related to new oral contracts. ECF No. 6 at 4; ECF No. 25-1 at ¶ 16. And in any event, I would not find that Wells Fargo waived this defense given that Greenstein has shown no prejudice resulting from Wells Fargo's failure to specifically plead it. *See Camarillo v. McCarthy,* 998 F.2d 638, 639 (9th Cir. 1993) ("In the absence of a showing of prejudice, however, an affirmative defense may be raised for the first time at summary judgment.").

To prove fraud, Greenstein must show: "(1) [a] false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) [that] defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation."[32]  Greenstein fails on multiple fronts.

First, Greenstein has not created a triable issue as to whether anyone from Wells Fargo made a false representation to him.  Greenstein argues that Wells Fargo lied when it led him to believe that it had the unilateral power to modify his loan, but Greenstein offers no evidence that Wells Fargo ever told him that.  The undisputed evidence shows that Wells Fargo said that it would consider Greenstein for a loan modification; it never told Greenstein that it could, or would, complete the approval process by itself.  In any event, there is no evidence that Wells Fargo could not in fact modify the loan on its own: after all, it was the assignee of Greenstein's note and deed.[33]  In fact, Wells Fargo eventually processed Greenstein's application at one point, which suggests that it could.[34]

Finally, there is no evidence of damages.  Greenstein says he relied on Wells Fargo's statements in paying down his principal—but he already had a contractual obligation to make those payments.  For all of these reasons, Greenstein's fraud claim must also fail.

### III. CONCLUSION

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment **(ECF No. 25) is GRANTED**.

/ / / /

/ / / /

---

[32] *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998).

[33] ECF No. 32-3.

[34] Greenstein also argues that Wells Fargo could not foreclose on his home and that this means Wells Fargo could not modify his loan.  But he provides no evidence or authority to support this contention.

IT IS FURTHER ORDERED that the clerk of court is instructed to enter judgment in favor of defendant Wells Fargo Bank, N.A. and close this case.

DATED this 28th day of March, 2017.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE